UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
STUART SANSEVIRO,

                       Plaintiff,              <u>MEMORANDUM AND ORDER</u>

  -against-                                CV 12-4985 (LDW) (AKT)

STATE OF NEW YORK, et al.,

                       Defendants.
-------------------------------------------------------------X
WEXLER, District Judge

Plaintiff Stuart Sanseviro ("Sanseviro") brings this civil rights action against defendants (1) New York State, New York State Police Department ("NYSPD"), New York State Police Captain James Dewar, New York State Police Senior Investigator Joseph De Maria, New York State Police Investigator Edward Franke ("Investigator Franke"), and various other New York State Police Investigators (collectively, the "State Defendants"); and (2) Nassau County, former Nassau County District Attorney Kathleen Rice ("DA Rice"), current or former Nassau County Assistant District Attorneys Elise McCarthy ("ADA McCarthy"), Karen Bennett ("ADA Bennett"), and Teresa Corrigan ("ADA Corrigan"), and Nassau County District Attorney Chief Investigator Charles Ribando ("Investigator Ribando") (collectively, the "County Defendants"). Sanseviro asserts various federal claims under 42 U.S.C. § 1983, including false arrest, malicious prosecution, violation of procedural due process, and failure to train and supervise, as well as supplemental state law claims. Sanseviro, the State Defendants, and the County Defendants each move for summary judgment under Rule 56 of the Federal Rules of Civil

Procedure ("FRCP").  The Court, having heard oral argument on July 29, 2015 and January 4, 2016, reserved decision.

I.  BACKGROUND

In 1994, the United States Congress enacted legislation restricting the manufacture, transfer, and possession of certain "semiautomatic assault weapons."  As recently summarized by the Second Circuit, the 1994 federal statute defined "semiautomatic assault weapons" in two ways:  "First, it catalogued 18 specifically prohibited firearms . . . .  Second, it introduced a 'two-feature test,' which prohibited any semiautomatic firearm that contained at least two listed military-style features, including a telescoping stock, a conspicuously protruding pistol grip, a bayonet mount, a flash suppressor, and a grenade launcher."  *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 248 (2d Cir. 2015).  "The federal assault-weapons ban expired in 2004, pursuant to its sunset provision."  *Id.*

In 2000, New York enacted legislation that closely mirrored the federal statute, including the "two-feature test" for prohibited semiautomatic firearms.  *Id.*  The parties refer to the "two-feature test," as the "characteristics" provision of the assault-weapons ban.  Under this provision, New York Penal Law § 265.00(22)(a), a firearm is considered an assault weapon and therefore illegal if it has the ability to accept a detachable magazine and contains two of the following enumerated characteristics:  (1) a folding or

telescoping stock; (2) a conspicuously protruding pistol grip; (3) a bayonet mount; (4) a flash suppressor or thread barrel designed to accommodate one; and (5) a grenade launcher.

Sometime in or before August 2010, Sanseviro became interested in buying T&T Gunnery, a licensed gun dealer in Nassau County, owned by Martin Tretola ("Tretola"). A few years earlier, Tretola and T&T Gunnery successfully sued Nassau County for malicious prosecution, following criminal charges that had been brought against the T&T Gunnery related to a faulty gas line. On August 24, 2010, undercover investigators from the New York State Gun Investigation Unit ("GUI"), in a joint investigation with the Nassau County District Attorney's Office, purchased weapons at T&T Gunnery. According to the State Defendants, Sanseviro was behind the counter at T&T Gunnery and he "sold" one of those weapons—a Rock River Arms LAR-15 rifle (the "Rifle")—to the undercover investigator, who posed as a non-law enforcement civilian. A video of the undercover purchases on August 24 shows that the undercover investigator produced a driver's license, but that he did not produce proof that he was lawfully authorized to possess or carry the firearm as an exempt person under New York Penal Law § 265.20. *See* State Defendants' Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("State Defendants' LCR 56.1 Statement") Ex. 5; Transcript of Oral Argument on Jan. 4, 2016 ("Tr. "), at 33. At oral argument, Sanseviro conceded that he was a part-time employee of T&T Gunnery at the time. *See* Tr. 25.

According to the State Defendants, all of the weapons purchased on August 24 from T&T Gunnery failed the "characteristics" test. At oral argument on July 29, 2015, the State Defendants played a video showing Investigator Franke conducting the "characteristics" test on the Rifle. *See* State Defendants' LCR 56.1 Statement Ex. 6; Tr. 28. The State Defendants maintain that the video shows that purportedly permanent modifications to the Rifle were "easily" or "readily" reversible so that the Rifle was actually an illegal assault weapon with two or more of the offending characteristics. *See* State Defendants' LCR 56.1 Statement Ex. 6; Tr. 28-29. In fact, the State Defendants claim that the testing demonstrated the existence of three such characteristics, two of which they maintain were easily reversible. *See* Tr. 28-29.

On February 16, 2011, Tretola and certain of his employees, including Sanseviro, were arrested at T&T Gunnery. On February 17, 2011, DA Rice held a press conference and issued a press release, captioned: "DA Rice Busts Five Nassau Gun Shops for Selling Illegal Assault Weapons." *See* Declaration of Ralph J. Reissman in Support of County Defendants' Motion for Summary Judgment ("Reissman Decl."), Ex. AC; Exhibits 1-28, Plaintiff's Motion for Summary Judgment ("Plaintiff's Ex. __") Ex. 6. The press release included a reference to Sanseviro and provided in part:

> Rice said that shop owners were breaking the law by temporarily modifying the weapons to appear as though they lacked the required characteristics of an assault weapon. However, the temporary modification was easily reversible, thereby making them full-fledged assault weapons. For example, a pin was placed in the stock of a weapon in an

5

> attempt to prevent its collapse. However, the pins were designed to be easily removable making the stock collapsible.
>
> . . . .
>
> "The nine men arrested today were openly breaking the law, making a practice of putting profits before the safety of our citizens, and flooding our streets with dangerous assault weapons," Rice said. "Make no mistake, these are combat-specific weapons and not intended for hunting. They have no place on our streets or in the hands of civilians."

Reissman Decl. Ex. AC; Plaintiff's Ex. 6.

That same day, February 17, Sanseviro was arraigned, charged under a felony complaint sworn by Investigator Franke. Sanseviro was charged with (1) violating New York Penal Law § 265.10(3), which prohibits "disposing of" (*i.e.*, selling) an assault weapon, *and* (2) violating New York Penal Law § 400.00(12), which prohibits selling a firearm without first requiring the buyer to produce either a license valid to carry or possess the firearm or proof of lawful authority as an exempt person (as per the list of exemptions in New York Penal Law § 265.20). T&T Gunnery, Tretola, and the other employees were also charged with crimes related to the arrests referenced in the press release. On May 7, 2012, a grand jury voted no "true bill" and dismissed the charges against T&T Gunnery, Tretola, and the other employees. Once the case was dismissed, the Nassau County District Attorney's Office dismissed the charges against Sanseviro in the interests of justice. *See* Reissman Decl. Ex. X.

At oral argument, Sanseviro maintained, *inter alia*, that DA Rice's statements about collapsible stocks and removable muzzle breaks, reflected in the February 17 press

release, was a "sham," disguising the "political goal" of the GUI investigation and the February 16 arrests. Tr. 5-18. Sanseviro argued that "the nonsense of this narrative that this case was about collapsible stocks, or things like that, took place only after [DA Rice] failed her first purpose, which was to get all assault rifles from all people in Nassau County registered and then collected." Tr. 6. In this respect, Sanseviro referenced, *inter alia*, deposition testimony of various County Defendants (including DA Rice and ADA Bennett) purportedly showing that DA Rice was attempting to "change the way the law was being enforced throughout the entire state 180 degrees" by "stop[ping] the sale of copies or duplicates, not collapsible stock weapons," but this attempt failed when she was unable to obtain an opinion from the solicitor general of New York State agreeing with her interpretation of the law. Tr. 9-12. As part of this attempt, according to Sanseviro, DA Rice prepared a version of a "non-prosecution agreement" that was offered to various entities, but which was "eventually withdrawn when the [New York State] Attorney General refused to back this." Tr. 14. In addition, according to Sanseviro, there was "no official procedure" or "written guidelines" regarding removal of banned characteristics, Tr. 21, rather Defendants knew that Lieutenant James Sherman ("Lt. Sherman") and Technical Sergeant Wyndell Hurtt ("Tech. Sgt. Hurtt") of the NYSPD were giving advice to Nassau County gun stores, including T&T Gunnery, that they were allowed to remove offending "characteristics" of a weapon for possession by the general public.

II. DISCUSSION

A. Summary Judgment Standard

A party seeking summary judgment has the burden of establishing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FRCP 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden of showing the absence of a genuine dispute as to any material fact rests on the party seeking summary judgment. *McLee v. Chrysler Corp.,* 109 F.3d 130, 134 (2d Cir. 1997).  In defending against a motion for summary judgment, the nonmoving party may not rely on mere allegations, but must submit some evidence, by affidavits or otherwise, showing a genuine dispute of material fact.  *See* FRCP 56(c); *Anderson,* 477 U.S. at 249.  All inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion."  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Hawkins v. Steingut,* 829 F.2d 317, 319 (2d Cir. 1987).

B. Claims Against New York State and Official Capacity Claims

As an initial matter, the State Defendants argue that Sanseviro's federal claims against New York State, the NYSPD, and the individual State Defendants in their official capacities are barred by the Eleventh Amendment.  Sanseviro does not argue otherwise. Accordingly, these claims are dismissed.  Thus, the only claims against the State Defendants are those against individual State Defendants in their individual capacities.

C. <u>False Arrest Claim under § 1983</u>

To prevail on a § 1983 false arrest claim, a plaintiff must prove: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was "not otherwise privileged." *Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 118 (2d Cir.1995); *Gil v. Cnty. of Suffolk*, 590 F. Supp. 2d 360, 366 (E.D.N.Y. 2008). The final element of the claim is negated if there was probable cause for the arrest; in other words, probable cause is an absolute defense to a false arrest claim. *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir. 2004); *Caldarola v. Calabrese,* 298 F.3d 156, 161 (2d Cir. 2002); *Singer,* 63 F.3d at 118-19; *Gil*, 590 F. Supp. 2d at 366. "Probable cause to arrest exists when the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.' " *Escalera*, 361 F.3d at 743 (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).

Defendants argue, *inter alia*, that Sanseviro's § 1983 false arrest claim against the individual State Defendants and County Defendants must be dismissed based on qualified immunity. The Court agrees. Government officials exercising discretionary functions are entitled to qualified immunity in a § 1983 action "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982), *or* insofar as it was

objectively reasonable for them to believe that their conduct did not violate such rights, *see Anderson v. Creighton,* 483 U.S. 635, 638-39 (1987). In a case alleging false arrest, even if probable cause is ultimately found not to exist, an arresting officer is still entitled to qualified immunity if "arguable probable cause" existed. *Escalera*, 361 F.3d at 743; *Caldarola*, 298 F.3d at 162. "An officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest—that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.' " *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (quoting *Lennon v. Miller*, 66 F.3d 416, 423-24 (2d Cir. 1995)); *see also Caldarola*, 298 F.3d at 162 (arguable probable cause exists where officer holds reasonable, albeit mistaken, belief as to probable cause).

Upon consideration, the Court concludes that the record, viewed in the totality of the circumstances, establishes the existence of "arguable probable cause" for the arrest on at least one, if not both, of the charges. Specifically, officers of reasonable competence could disagree on whether there was probable cause to arrest Sanseviro for sale of the Rifle in violation of § 400.00(12), as it was reasonable for the individual State Defendants to believe: (1) that Sanseviro was an employee of T&T Gunnery and he "sold" the Rifle; (2) that Investigator Franke did not unlawfully modify the Rifle or otherwise fabricate evidence; (3) that the Rifle, upon Investigator Franke's testing, revealed certain characteristics such that it was an assault weapon under New York law, namely § 265.00(22)(a); and (4) that probable cause to arrest existed for violation of § 400.00(12)

(for selling a firearm without first requiring the buyer to produce proof that the buyer is an exempt person), particularly in light of the substantial uncertainty as to the meaning and interpretation of § 265.00(22)(a) as applied to the sale of the Rifle by a licensed dealer to non-law enforcement civilians. Thus, the individual State Defendants are entitled to dismissal of the § 1983 claim for false arrest. As the County Defendants are alleged to have been working with the State Defendants in the investigation and arrest, they are also entitled to qualified immunity.[1]

D.  Malicious Prosecution Claims under § 1983

To prevail on a § 1983 malicious prosecution claim, a plaintiff must prove: (1) the initiation or continuation of a criminal proceeding against the plaintiff; (2) a favorable termination of the proceedings; (3) lack of probable cause for commencement of the proceeding; and (4) the defendant acted with actual malice. *Russell v. Smith,* 68 F.3d 33, 35 (2d Cir. 1995); *see Murphy v. Lynn,* 118 F.3d 938, 947 (2d Cir. 1997); *Gil*, 590 F. Supp. 2d at 369. The "existence of probable cause is a complete defense to a claim of malicious prosecution in New York," *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003), but the defendant must have possessed probable cause as to each offense charged, *see Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir.1991); *Costello v. Milano*, 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014). The requirement of "malice" does not require a showing of "actual spite or hatred, but means only 'that the defendant must have

---

[1] Given this determination, the Court need not address the individual County Defendants' assertion of absolute immunity as to this claim.

commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.' " *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 573 (2d Cir. 1996) (quoting *Nardelli v. Stamberg,* 44 N.Y.2d 500, 502-03 (1978)).

The individual County Defendants argue that Sanseviro's § 1983 malicious prosecution claims should be dismissed against them based on absolute immunity, qualified immunity, and lack of evidence sufficient to show malice. The State Defendants argue that this claim (which appears to be against Investigator Franke only) must be dismissed based on qualified immunity and lack of evidence sufficient to show malice.

As for the issue of malice, Sanseviro offered various deposition excerpts and other exhibits, including, *inter alia*, those concerning (1) the individual County Defendants' interpretation and enforcement of the relevant New York Penal Law provisions; (2) Investigator Franke's knowledge that Lt. Sherman and Tech. Sgt. Hurtt were giving advice to gun stores regarding removal of offending "characteristics" of a weapon for possession by the general public; (3) the February 17 press release and non-prosecution agreement; and (4) the successful prior civil action brought by Tretola and T&T Gunnery against Nassau County for malicious prosecution. Upon consideration of the record, the Court concludes that the evidence is not sufficient to support a finding that the individual County Defendants or Investigator Franke initiated criminal proceedings against Sanseviro for "something other than a desire to see the ends of justice served."

Moreover, to the extent that Sanseviro bases this claim on Investigator Franke's acts in testing the Rifle for characteristics, that evidence is not sufficient to support a finding of malice on his part. Absent sufficient proof of malice, Sanseviro's malicious prosecution claim must be dismissed.

As for the individual County Defendants' assertion of absolute immunity, it is well established that prosecutors acting within the scope of their duties in initiating and pursuing a criminal prosecution are immune from a civil suit for damages under § 1983. *Imbler v. Pachtman,* 424 U.S. 409, 410, 431 (1976); *Shmueli v. City of New York,* 424 F.3d 231, 236 (2d Cir. 2005). To establish absolute prosecutorial immunity, prosecutors have the burden of proving that " 'they were functioning as an 'advocates' when they engaged in the challenged conduct.' " *Warney v. Monroe County,* 587 F.3d 113, 121 (2d Cir. 2009) (quoting *Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir.1996)). "[P]rosecutors are absolutely immune . . . for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.' " *Burns v. Reed,* 500 U.S. 478, 486 (1991) (quoting *Imbler,* 424 U.S. at 430-31) (citation omitted). In addition, absolute immunity also applies to "employees who assist [the prosecutor] and who act under [the prosecutor's] direction in performing functions closely tied to the judicial process." *Hill v. City of New York*, 45 F.3d 653, 660 (2d Cir. 1995). Sanseviro's malicious prosecution claim challenges the acts of the individual County Defendants—DA Rice, ADAs McCarthy, Bennett, and

Corrigan, and Investigator Ribando (who assisted them)—in initiating and pursuing a criminal prosecution against him. As such, the acts of these prosecutors and their investigator are subject to absolute immunity, and the malicious prosecution claim must be dismissed as against them on this ground alone.

Moreover, the individual County Defendants' and Investigator Franke also assert the defense of qualified immunity. These defendants are immune from a civil suit for damages for malicious prosecution if there was "arguable probable cause" for each of the charges against Sanseviro. *See Jean v. Montina,* 412 Fed. Appx. 352, 354 (2d Cir. 2011) (summary order). "Arguable probable cause to charge exists where, accounting for any new information learned subsequent to an arrest, 'it was not manifestly unreasonable for [the defendant officer] to charge [the plaintiff]' with the crime in question." *Id.* (quoting *Lowth,* 82 F.3d at 572).

Upon consideration, the Court concludes that the record, viewed in the totality of the circumstances, establishes the existence of "arguable probable cause" to charge Sanseviro for sale of the Rifle in violation of § 400.00(12). Specifically, officials of reasonable competence could disagree on whether there was probable cause for this charge, as it was reasonable for Investigator Franke and the individual County Defendants to believe: (1) that Sanseviro was an employee of T&T Gunnery and he "sold" the Rifle; (2) that Investigator Franke did not unlawfully modify the Rifle or otherwise fabricate evidence; (3) that the Rifle, upon Investigator Franke's testing, revealed certain

characteristics such that it was an assault weapon under New York law, namely § 265.00(22)(a); (4) that probable cause existed to charge a violation of § 400.00(12) (for selling a firearm without first requiring the buyer to produce proof that the buyer is an exempt person), particularly in light of the substantial uncertainty as to the meaning and interpretation of § 265.00(22)(a), as applied to the sale of the Rifle by a licensed dealer to non-law enforcement civilians; and (5) that no new information learned subsequent to the arrest eliminated that probable cause.

As for the charged violation of § 265.10(3), that provision makes it a crime for "[a]ny person . . . to dispose[] of any . . . assault weapon." N.Y. Penal Law § 265.10(3). Nevertheless, § 265.20(a) provides various exemptions from the application of § 265.10(3). One such exemption is for a "dealer in firearms." *See* N.Y. Penal Law § 265.20(a)(10). The parties acknowledge that T&T Gunnery is a "dealer in firearms," as defined in § 265.00(9), seemingly exempt from § 265.10(3) by virtue of § 265.20(a)(10). Defendants argue, however, that they reasonably believed that uncertainty existed as to whether a "dealer in firearms" was exempt from § 265.10(3) with respect to the sale of an "assault weapon" because § 265.20(a)(16) provides that the term "firearm" as "used in paragraph[] . . . ten [*i.e.*, § 265.20(a)(10)] shall not include . . . an assault weapon," N.Y. Penal Law § 265.20(a)(16). *See, e.g.*, Plaintiff's Ex. 9. Upon consideration, the Court concludes that the record, viewed in the totality of the circumstances, establishes the existence of "arguable probable cause" to charge Sanseviro for sale of the Rifle in

violation of § 265.10(3). Specifically, officials of reasonable competence could disagree on whether there was probable cause for this charge, as it was reasonable for Investigator Franke and the individual County Defendants to believe: (1) that Sanseviro was an employee of T&T Gunnery and he "sold" the Rifle; (2) that Investigator Franke did not unlawfully modify the Rifle or otherwise fabricate evidence; (3) that the Rifle, upon Investigator Franke's testing, revealed certain characteristics such that it was an assault weapon under New York law, namely § 265.00(22)(a); (4) that probable cause existed to charge a violation of § 265.10(3) for selling an assault weapon, particularly in light of the substantial uncertainty as to the meaning and interpretation of §§ 265.00(22)(a), 265.20(a)(10), and 265.20(a)(16), as applied to the sale of the Rifle by a licensed dealer to non-law enforcement civilians; and (5) that no new information learned subsequent to the arrest eliminated that probable cause. Thus, the malicious prosecution claim must be dismissed as against Investigator Franke and the individual County Defendants based on qualified immunity.

Accordingly, Investigator Franke and the individual County Defendants are entitled to dismissal of the § 1983 claim for malicious prosecution.

E.  Procedural Due Process Claim

Sanseviro also asserts a claim for violation of procedural due process under the Fourteenth Amendment, stemming from Investigator Franke's alleged unlawful modification of the Rifle in testing the weapon for characteristics. Sanseviro fails to

provide evidence that would support a finding or raise a genuine dispute as to material fact that Investigator Franke unlawfully modified the Rifle or otherwise fabricated evidence. Accordingly, this claim is dismissed.

F. <u>Remaining Federal Claims</u>

As for the failure to train or supervise claims, they are dismissed given the grounds stated for dismissal of the § 1983 false arrest, malicious prosecution, and procedural due process claims, and the absence of sufficient evidence that any defendant supervisory official created, or allowed to continue, a policy or custom under which an unconstitutional practice occurred, *see Tretola v. D'Amico,* No. 13–CV–5705, 2014 WL 2957523, at *8 (E.D.N.Y. July 1, 2014).

As for the *Monell* claims against Nassau County, they are dismissed given the dismissal of all federal claims against the individual County Defendants. *See Pinter v. City of New York*, 448 Fed. Appx. 99, 106 (2d Cir. 2011); *Escalera*, 361 F.3d at 749.[2]

G. <u>Supplemental State Law Claims</u>

Given the dismissal of the federal claims, only supplemental state law claims remain. The Court declines to exercise jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c). Accordingly, the state law claims are dismissed without prejudice for

---

[2]Sanseviro also purports to assert a Fourth Amendment search and seizure claim, apparently raising it for the first time in the summary judgment motions. *See* Amended Memorandum in Support of Plaintiff's Motion for Summary Judgment, at 4-5; Memorandum in Opposition to the State Defendants' Motion for Summary Judgment, at 6-8. This claim is dismissed as it was not properly raised.

lack of subject matter jurisdiction.

### III. CONCLUSION

For the reasons above, the Court (1) grants the State Defendants' and the County Defendants' motions for summary judgment, such that Sanseviro's federal claims are dismissed with prejudice and his supplemental state law claims are dismissed without prejudice; and (2) denies Sanseviro's motion for summary judgment. The Clerk of Court is directed to enter judgment and close the file.

SO ORDERED.

_____/s/_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
        January 25, 2016